[Civ. No. 7096. Fifth Dist. May 17, 1984.]

THACHER THRELKELD et al., Plaintiffs and Appellants, v.
RANGER INSURANCE COMPANY et al., Defendants and Respondents.

COUNSEL

Chinello, Chinello, Shelton & Auchard, Andrew B. Jones and John D. Chinello, Jr., for Plaintiffs and Appellants.

Wayne N. Witchez for Defendants and Respondents.

OPINION

FRANSON, Acting P. J.—

### STATEMENT OF FACTS

Appellants Thacher Threlkeld and Victor DeLuca, Jr., were co-owners of a Piper Twin Commanche aircraft. Respondents insured the aircraft for hull damage.

While the policy was in force, Threlkeld, a business associate and a pilot, Rowland Eskew, were en route from Burbank to Fresno. Eskew was piloting the plane. There was cloud cover, and they were flying by visual flight rules (VFR). Eskew tried to find a way through the mountains and the clouds, but through a combination of "downdraft" conditions and the plane's inability to climb at a normal rate, they were forced down on Frazier Mountain, near Gorman.

No one was seriously injured, but the plane was practically a total loss. Appellants made an insurance claim for the hull damage, which respondents refused.

The insurance policy had an exclusion barring coverage unless the plane's airworthiness certificate was "in full force and effect." The plane's airworthiness certificate provided it would remain in effect as long as the aircraft was maintained in accordance with Federal Aviation Administration (FAA) regulations. Respondents contend that appellants' failure to get an annual inspection suspended the airworthiness certificate, excluding coverage. Appellants contend the exclusion's language is ambiguous; that the exclusion

may be construed to incorporate all FAA regulations into the policy; hence, the exclusion is invalid under Insurance Code section 11584.[1]

The trial court found that appellants failed to get the required annual inspection (the aircraft was four months beyond the annual maintenance inspection required by FAA regulations), that a proper inspection would have revealed the cause of the plane's sluggish performance and that this failure was a cause of the crash.[2] The trial court held that the policy exclusion did not violate the reasonable expectations of the parties as it relates to the circumstances of the accident and that the exclusion is valid under Insurance Code section 11584. Appellants challenge the trial court's rulings and also contend that appellant DeLuca should be insured, because there was no showing that he personally consented to the use of the plane without its annual inspection.

DISCUSSION

I.

*The Policy Exclusion Is Not Ambiguous*

 Appellant's insurance policy contains the following exclusion: "to any Insured: [¶] (b) who operates or permits the operation of the aircraft, while in flight, unless its airworthiness certificate is *in full force and effect*; . . ." (Italics added.) The airworthiness certificate for appellants' aircraft was issued in 1965, when the aircraft was manufactured, and shows an airworthiness classification of "STANDARD—NORMAL." Paragraph 4 of the certificate provides: "This Certificate will remain in effect as long as the aircraft *is maintained in accordance with Part 43 of the Civil Air Regulations* unless surrendered, suspended, revoked, or a termination date is oth-

---

[1]At the time of the crash, Insurance Code section 11584 read in pertinent part: "No policy of insurance issued or delivered in this state covering any loss, expense or liability arising out of the ownership, maintenance, or use of an aircraft shall exclude or deny coverage because the aircraft is operated in violation of federal or civil air regulations, or any state law or local ordinance.

"This section does not prohibit the use of specific exclusions or conditions in any such policy which relates to any of the following:

". . . . . . . . . . . . . . . . . . . . . .

"(4) Establishing limitations on the use of the aircraft."

[2]The trial court's finding that appellants' failure to get the proper inspection was a cause of the crash is not directly relevant to this appeal. Under California law, no causal relationship is required to exclude coverage. (*Middlesex Mutual Ins. Co.* v. *Bright* (1980) 106 Cal.App.3d 282, 289-291 [165 Cal.Rptr. 45].)

erwise established by the Administrator of the Federal Aviation Agency." (Italics added.)[3]

We emphasize from the outset that this litigation is between the named insureds and the insurer over a claim for hull damage to the insureds' aircraft. This is *not* an action by a third party for bodily injury or property damage *liability* coverage under the policy. (Cf. *Woods* v. *Insurance Co. of North America* (1974) 38 Cal.App.3d 144 [113 Cal.Rptr. 82, 72 A.L.R.3d 515].) If this were the case, strong public policy principles might force a restricted interpretation of the policy terms which would provide coverage to the injured third party.

■ In interpreting the policy, we must apply the general principle that any doubt as to the policy's meaning must be resolved against the insurer, and any exception to the performance of the basic underlying insuring obligations must be stated clearly to apprise the insured of its effect. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) This means that any exclusion in the policy must be conspicuous, plain and clear. Further, the policy should be read as a layman would read it, not as analyzed by an attorney or insurance expert. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) Finally, the interpretation of the policy must be pursued in the light of the *insured's* reasonable expectations. (*Middlesex Mutual Ins. Co.* v. *Bright, supra,* 106 Cal.App.3d at p. 292.)

■ Appellants contend the "full force and effect" language of section 4(b) of the policy is ambiguous; that it may be construed to include all of the FAA regulations revelant to the operation of the plane. This interpretation would render the insurance contract illusory since almost all crashes involve some breach of the regulations.

We reject appellants' contention that the "full force and effect" language of the exclusion is unclear. Given their commonly understood meaning, the words refer only to the effectiveness of the airworthiness certificate and not to all potential FAA regulation violations. The certificate itself, following

---

[3]Part 43 of the FAA regulations prescribes the rules governing the maintenance, preventive maintenance, rebuilding, and alteration of any aircraft having a United States airworthiness certificate other than an experimental airworthiness certificate. (14 C.F.R. § 43.1 (1983).)

Title 14 Code of Federal Regulations, section 21.181(a)(1) (1983), provides, "Standard airworthiness certificates . . . are effective as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 43 and 91 of this chapter and the aircraft are registered in the United States."

Parts 43 and 91 require an annual inspection and approval for return to service of the aircraft by authorized personnel.

the language of 14 Code of Federal Regulations, section 21.181, states that it remains effective "as long as" the plane is maintained according to the FAA regulations. This language explicitly limits the scope of the exclusion to the maintenance regulations and does not permit incorporation of all of the FAA regulations.

Out of state decisions support our holding. In *Security Mut. Cas. Co.* v. *O'Brien* (1983) 99 N.M. 638 [662 P.2d 639], the New Mexico Supreme Court was faced with the interpretation of a similar policy exclusion where the insured had failed to obtain a timely annual inspection of the aircraft. The lower court had held the exclusion clauses to be ambiguous and void because of the failure to define the terms "airworthiness certificate," "airworthiness certification," and "full force and effect." The Supreme Court reversed, holding that the terms were not ambiguous when construed in the light of the context in which they were used. (*Id.*, at p. 642.) Since no timely annual inspection had been performed on the insured's aircraft, the airworthiness certificate lapsed and was no longer "in full force and effect." "To hold otherwise, we would have to rewrite the regulations or the insurance policy. This we will not do." (*Id.*, at p. 641.) In *Ochs* v. *Avemco Ins. Co.* (1981) 54 Ore.App. 768 [636 P.2d 421], the court reviewed a policy which excluded coverage for property damage to an aircraft that did not have a "valid and currently effective" airworthiness certificate. In rejecting an argument that there must be a causal connection between the policy exclusion and the cause of the accident to enable the insurer to avoid payment of the loss, the court stated "The language of the exclusion is clear and unambiguous. There is no 'in-flight' coverage if the aircraft does not bear the appropriate certificate. Unambiguous language does not require construction." (*Id.*, at p. 422.)

Appellants must be presumed to have known the terms and conditions of the airworthiness certificate of their aircraft, which was incorporated by reference into the policy exclusion. The language of the certificate is clear— the certificate will remain "in effect as long as the aircraft *is maintained* in accordance with . . . the [federal air regulations] . . . ." (Italics added.) Thus, appellants could not have had any reasonable expectation that the policy would provide hull damage coverage if they flew their aircraft beyond the annual inspection date. (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d 263, 269-270; see also *Middlesex Mutual Ins. Co.* v. *Bright, supra*, 106 Cal.App.3d 282, 292-293.)

Appellants' citation to *Woods* v. *Insurance Co. of North America, supra*, 38 Cal.App.3d 144 to support their argument that the "full force and effect"

language of the exclusion is ambiguous, is misplaced. In *Woods,* the trial court had entered judgment in favor of plaintiff passenger injured in an aircraft accident, declaring that an aircraft liability policy issued by defendant was in effect at the time of the accident. The pilot involved was duly licensed and fully qualified in every respect, but he had inadvertently allowed his medical certificate to expire about 25 days prior to the accident. The appellate court affirmed, rejecting the insurer's contention that the requirement in an endorsement to the policy that the pilot be "properly certificated and rated for the flight and the aircraft" included the current medical certificate required by FAA regulations. The court noted that a policy exclusion referring to federal regulations had been deleted in consideration of payment of a higher premium. It then found the term "properly certificated" ambiguous. Since ambiguous terms in an insurance policy are construed against the insurer, the phrase "properly certificated and rated for the flight and aircraft" could only be interpreted reasonably to refer to the pilot's flight proficiency and skill and not to his physical health as evidenced by a medical certificate. If the insurer had intended the "properly certificated" term to mean that the pilot must hold in addition to a valid license a current medical certificate, the insurer should have specifically so stated.

*Woods* is not in point. In that case, it was obviously unclear whether the language "properly certificated and rated for the flight and the aircraft" included the current medical certificate required by FAA regulation. As we have explained, we find no uncertainty in the present exclusion.

II.

*The Exclusion Is Valid Under*
*Insurance Code Section 11584*

■ Even if the exclusion is clear and specific, it must comply with Insurance Code section 11584. This section first prohibits exclusions or denial of coverage for losses "arising out of the ownership, maintenance, or use of an aircraft . . . operated in violation of federal ·or civil air regulations, . . ." This language has been interpreted to prohibit exclusions or denial of coverage because of the *manner* of the operation of the aircraft which is in violation of federal laws and regulations and not to the use for which the aircraft is operated. (*Middlesex Mutual Ins. Co.* v. *Bright, supra,* 106 Cal.App.3d 282, 288.) Since the present exclusion does not pertain to the manner of operating the aircraft while in flight but rather to its use

beyond the annual inspection date, the statutory proscription does not foreclose the instant exclusion.

Furthermore, the statute expressly permits the use of specific exclusions or conditions in policies which "establish[] limitations on the use of the aircraft." (Ins. Code, § 11584, subd. (4).) This fourth exception found in section 11584 authorizes the exclusion here involved because the exclusion is a limitation on the use of the aircraft—it shall not be operated when the airworthiness certificate is not in effect—i.e., when the plane is beyond the annual inspection date. Just as in *Middlesex Mutual Ins. Co.* v. *Bright, supra,* 106 Cal.App.3d 282, where a similar policy exclusion was upheld where the insured's plane was operating for an illegal purpose (the plane crashed while smuggling marijuana), the present exclusion is valid under Insurance Code section 11584, subdivision (4).

## III.

### There Is Substantial Evidence to Support the Exclusion of Coverage to Appellant DeLuca

The exclusion applies "to any insured . . . who operates or *permits* the aircraft" (italics added) to be operated without the airworthiness certificate. Respondents do not contest that they had the burden of proving that appellant DeLuca permitted the operation of the aircraft in violation of this exclusion. (*Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 472 [267 P.2d 777].)

Appellant Threlkeld testified that he and DeLuca owned the plane as partners. No one kept track of who used the plane, and both partners signed checks for maintenance expenses. Russ Borba, the other passenger on board, testified that the reason for the trip was to take care of a business that was partially owned by Mr. DeLuca.

Since appellants owned and operated the plane as partners, their normal practice of using the plane at will, without consulting each other, constitutes "permission" to operate the plane at the time of the crash. Appellants cite *Visco Flying Co.* v. *Hansen & Rowland* (1960) 184 Cal.App.2d 829 [7 Cal.Rptr. 853] for the proposition that respondents must prove knowledge and consent on DeLuca's part. This case is inapposite. The *contract language* in *Visco* required knowledge and consent. (*Id.,* at pp. 834-835.) The exclusion in this case does not contain similar language. Furthermore, there was adequate evidence that appellant Threlkeld was well aware that the plane had not been properly inspected. As a partner, this knowledge was imputable to appellant DeLuca.

The judgment is affirmed.

Andreen, J., and Hamlin, J., concurred.

A petition for a rehearing was denied June 12, 1984.